**In re Glenn R. ROSAGE and Doris J. Rosage, husband and wife, and Glenn R. Rosage t/d/b/a Westwood Garden Haven, Debtors.**

**Bankruptcy No. 85–605.**

United States Bankruptcy Court, W.D. Pennsylvania.

Nov. 30, 1987.

James R. Walsh, Spence, Custer, Saylor, Wolfe & Rose, Johnstown, Pa., for debtors.

Donald L. Phillips, Phillips and Galanter, Pittsburgh, Pa., for Conaway, Inc.

## MEMORANDUM OPINION

JOSEPH L. COSETTI, Bankruptcy Judge.

In this dispute the Court is presented with a creditor's election, pursuant to 11 U.S.C. § 1111(b). Bankruptcy Rule 3014 provides that the election shall be made in writing and signed prior to the conclusion of the hearing on the Disclosure Statement or made at the hearing. On about May 27, 1987, the creditor, Conaway, Inc. ("Conaway"), complied with Bankruptcy Rule 3014 and filed its election in writing. On May 28, 1987, the debtor, and on June 10, 1987 the Committee of Unsecured Creditors, filed their objection to the election. On June 12, 1987, immediately prior to the hearing on the Disclosure Statement, the election matter was called for a hearing. Conaway did not attend. After a brief hearing on June 12, 1987, the Court entered an order dismissing the election. Later at that hearing, the Disclosure Statement was approved.

On August 21, 1987, at the time set for the Confirmation Hearing, Conaway appeared and advised the Court that it had not been aware of the June 12, 1987 hearing concerning its Section 1111(b) election, which was held in connection with the Disclosure Hearing. Further, Conaway advised the Court that it had not received a copy of the June 12, 1987 order dismissing the election.

At the Confirmation Hearing, the Court was sitting in Johnstown and certificates of notice were not available. Further, the Court did not wish to resolve the substantive issue raised by Conaway by default. In order to insure due process, the Court reconsidered the June 12, 1987 order dismissing the election and determined to decide the dispute on its merits. It directed the parties to file briefs on the substantive issues.

The admitted facts are as follows:

Conaway filed a judgment in the amount of $15,640.31; the balance due is $13,-500.27. A claim in the amount of $13,-500.27 is admitted. This debt is supported by a judicial lien dated November 27, 1984. The debtors are owners of several pieces of real property. Parcel A, the debtors' residence, has a market value of $85,000. Three mortgages with balances of approximately $93,000 are senior to the judicial lien of Conaway. As to the debtors' residence, the lien of Conaway has no market value and would under 11 U.S.C. § 506 be considered as an unsecured debt. Property B consists of two parcels and has a market value of $125,000.00. Two mortgages with a balance of approximately $169,000 are senior to the judicial lien of Conaway. As to this property, the lien of Conaway has no market value and would under 11 U.S.C. § 506 be considered as an unsecured debt.

The Plan of Reorganization places the claims of Conaway in Class 7 by itself. The pertinent portions of the Plan which deal with the Conaway lien as it attaches to real property proposes pursuant to 11 U.S.C. § 506 to treat the lien as an unsecured debt. Further, it proposes to pay the claim in the amount of $13,500.27 as though this claim were a Class 11, which is the class that provides for the unsecured claims. Class 11 claimants are to receive a periodic distribution of approximately 19 cents on the dollar. Conaway elected under 11 U.S.C. § 1111(b) and voted against the Plan.

**DISCUSSION**

■ Conaway is unhappy because the debtor has negotiated a voluntary reduction of the first mortgage which benefits a second mortgage owned by a relative of the debtors. The second mortgage has also been modified. Additionally, Conaway objects because the debtors have not formally filed a motion under 11 U.S.C. § 506 to determine secured status of their claim. Conaway believes that the above negotiated mortgage reductions should be examined and possibly denied by the Court, especially as they deal with relatives and insiders. When a secured creditor has consented to modification, the Court does not believe a formal 11 U.S.C. § 506 hearing is required or would provide a different result than provided in the Plan. The relative has also consented to modification of their mortgage. No action has been taken by any party in interest, including Conaway, to subordinate this insider interest. We do not imply that such an action has merit. An 11 U.S.C. § 506 action would not provide for subordination.

Conaway admits that a sale of these properties at the market price would not provide sale proceeds which could pay their lien. Nevertheless, Conaway argues that a formal action pursuant to 11 U.S.C. § 506 is needed if the debtors desire to avoid the election of Conaway to retain its lien under § 1111(b). Conaway believes that the modification actions by the debtors are grounds for estoppel when the the debtor attempts to deny election.

■ The right to elect under § 1111(b) is not unconditioned. Conaway agrees that if the election is allowed, Conaway would receive no payment under the Plan for its claim (19 cents on the dollar). Conaway argues that if they are permitted to retain the lien, at some future date the property may increase in value and thus improve the value of the Conaway lien. Conaway argues that even without an improvement in market value, the debtors may wish to sell the property and would then be forced to bargain with Conaway for relinquishment of its lien.

The debtors regard this as an "inconsequential value" and rely on 11 U.S.C. § 1111(b)(1)(B)(i):

(i) the interest on account of such claims of the holders of such claims in such property is of inconsequential value;

The above section denies the election to a class whose secured claim is "inconsequential". A definition of inconsequential is not provided. For this analysis of inconsequential value, the Court focuses on the value of the property to which the lien attaches, not on the total claim. Section 1111(b) applies only to "a claim secured by a lien". This section does not determine the amount of a claim, but the amount of the secured claim. If a "secured claim" attached to

property of no market value, the inconsequential value term of Section 1111(b)(1)(B)(i) denies the election to that class of claims. Otherwise, creditors with liens of no market value could elect under § 1111(b) and attempt to bargain or harass the debtor post-confirmation to secure greater value for their lien. This type of action would disrupt the debtors' reorganization. The Court believes that the value of this lien related to nuisance and legal harassment is not a value recognized in bankruptcy.

Prior to Section 1111(b), under the previous Bankruptcy Act, non-recourse creditors who were undersecured were not provided with an unsecured claim in the bankruptcy plan. *Great National Life Ins. Co. v. Pine Gate Associates, Ltd.*, 2 BCD 1478 (Bankr. N.D.Ga.1976). Under the Act, in *Pine Gate*, it was possible to appraise the property and to pay the appraised value in cash. Recourse as an unsecured creditor was not provided, even if the contract so provided. The Congress believed this to be unfair, and Section 1111(b) provides recourse to all secured creditors, whether or not the contract so provides and prevents the Plan from diverting this value to junior or equity interests.

However, Congress has limited this election when the lien has inconsequential market value. These liens are denied the right to legal process when the result will not produce market value.

The election of Conaway under Section 1111(b) is denied. The Plan is affirmed.

An appropriate order will issue.