**In the Matter of GREENLAND VISTAS, INC., a Delaware corporation, sometimes known as Adrian Mall, as Nominee for Adrian Mall Limited Partnership, an Illinois Limited Partnership, and Adrian Mall Limited Partnership, an Illinois Limited Partnership, Debtors.**

**Bankruptcy No. 82–06713–B.**

United States Bankruptcy Court, E.D. Michigan, S.D.

Oct. 5, 1983.

---

Hertzberg, Jacob & Weingarten, P.C. by Herbert N. Weingarten, Detroit, Mich., for debtors.

Dickinson, Wright, Moon, Van Dusen & Freeman by James N. Candler, Jr., Detroit, Mich., for First Nat. Bank of Chicago.

## OPINION

GEORGE BRODY, Bankruptcy Judge.

Greenland Vistas, Inc., (debtor) filed a chapter 11 petition on November 26, 1982, as nominee for Adrian Mall, a limited partnership. Shortly thereafter, Adrian Mall, the limited partnership, also filed a chapter 11. The two proceedings were consolidated both substantively and procedurally.

The debtors are owners of a shopping mall known as Adrian Mall. First National Bank of Chicago (bank) is the holder of a nonrecourse mortgage note evidencing a $9,500,000 loan made to the debtor for the benefit of Adrian Mall Limited Partnership on May 1, 1975. As of the date of the filing of the Greenland Vistas' petition, the debtor was indebted to the bank in the approximate amount of $9,500,000. The parties concede that the fair market value of the mall does not exceed $6,000,000. On June 27, 1983, the debtor filed a disclosure statement. The disclosure statement contained a summary of a proposed plan filed by the debtor on June 10, 1983. The plan proposes to provide for the payment of the bank's secured claim to the extent of the fair market value of the mall—the only asset of the debtor. The plan makes no provision for payment to the bank for the difference between the value of the property subject to the security interest and the mortgage debt. Whether a nonrecourse secured creditor has an unsecured claim for the difference between the value of the property and the outstanding debt is crucial for confirmation of the debtor's plan. The parties, therefore, agreed that this preliminary question should be determined prior to the court's ruling on the adequacy of the disclosure statement.

The debtor contends that it does not have to provide for any payment to the bank in excess of the fair market value of the property subject to the bank's security interest. This conclusion is based upon the following argument.

1. A secured creditor has a secured claim only to the extent of the value of the property subject to its security interest. 11 U.S.C. § 506(a).[1]

2. The mortgage note held by the bank specifically provides that the bank does not have recourse against the debtor or any other party for the payment of any indebtedness in excess of the value of the property subject to the security interest.

3. The bank, therefore, has no deficiency claim against the estate and any such deficiency need not be dealt with under the plan.

4. Accordingly, the debtor need only provide for the payment of the secured claim in any manner authorized by section 1129(b)(3).

This argument merely restates the conclusion reached in *In re Pine Gate Associates, Ltd.*, 2 Bankr.Ct.Dec. (CRR) 1478 (Bankr.N.D.Ga.1976), decided under Chapter XII of the Bankruptcy Act. The drafters of the Code, however, decided that the result reached in *Pine Gate* dealt unfairly with nonrecourse secured creditors and enacted section 1111(b) to limit the control of a debtor when dealing with such creditors. Section 1111(b) provides as follows:

> (b)(1)(A) A claim secured by a lien on property shall be allowed or disallowed under section 502 of this title the same as if the holder of such claim had recourse against the debtor on account of such claim, whether or not such holder has such recourse, unless—
>
> > (i) The class of which such claim is a part elects, by at least two-thirds in

---

1. (a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.
11 U.S.C. § 506(a).

amount and more than half in number of allowed claims of such class, application of paragraph (2) of this subsection; or

(ii) such holder does not have such recourse and such property is sold under section 363 of this title or is to be sold under the plan.

(B) A class of claims may not elect application of paragraph (2) of this subsection if—

(i) the interest on account of such claims of the holders of such claims in such property is of inconsequential value; or

(ii) the holder of a claim of such class has recourse against the debtor on account of such claim and such property is sold under section 363 of this title or is to be sold under the plan.

(2) If such an election is made, then notwithstanding section 506(a) of this title, such claim is a secured claim to the extent that such claim is allowed.

Section 1111(b) permits a nonrecourse secured creditor to elect to have its claim treated as a secured claim to the extent of the existing indebtedness, notwithstanding section 506(a). § 1111(b)(1)(A). However, if the nonrecourse secured creditor does not make the election provided for by section 1111(b), the creditor is to be treated "the same as if the holder of such claim had recourse against the debtor on account of such claim," unless the property is sold under section 363 or is to be sold under the plan. *Id.* Clearly, therefore, an undersecured nonrecourse creditor may assert a deficiency claim under the Bankruptcy Code unless it makes the election provided for by section 1111(b)(2), or unless the property is sold under section 363 or is to be sold under the plan. Thus, absent any of the disqualifying conditions, an undersecured nonrecourse creditor is to be treated as a recourse creditor; Congress unmistakably intended such a result.

[A] secured claim is to be treated as a recourse claim in chapter 11 whether or not the claim is nonrecourse by agreement or applicable law. This preferred status for a nonrecourse loan terminates if the property securing the loan is sold under § 363 or is to be sold under the plan.

The preferred status also terminates if the class of which the secured claim is a part elects application of section 1111(b)(2).

124 Cong.Rec. H11103–04 (daily ed. Sept. 28 1978); 124 Cong.Rec. S17420 (daily ed. Oct. 6, 1978).

Commentators who discuss section 1111(b) reach the same conclusion:

With certain exceptions, nonrecourse claims secured by a lien on property of the estate will be treated for purposes of distribution under the plan as if the holder had recourse against the debtor, whether or not by agreement or under applicable law the holder had that recourse. For instance, a creditor who holds a claim under a mortgage against the debtor for $1,000,000 which is secured by real estate of the debtor worth $300,000 at the commencement of the case, would have a secured recourse claim under Code § 506(a) for $300,000 and an unsecured recourse claim for $700,000, even if under the terms of the mortgage the claim was without recourse. This approach represents a striking departure from the treatment of nonrecourse claims before Chapter 11 took effect. Thus, given the same figures in a case under former Chapter XII, the nonrecourse mortgagee would have been crammed down under Bankruptcy Act § 461(11) to $300,000 while the $700,000 unsecured deficiency would be wiped out because the creditor had no recourse against the debtor. The claim was limited to the value of the property. The conversion of claims from nonrecourse to recourse under Code § 1111(b) represents one of the nails driven in the Chapter XII coffin. The elimination of the nonrecourse deficiency claim at the option of the debtor gave emphasis to the one-sided nature of the cramdown clause under former Chapter XII.

3 *Norton Bankruptcy Law & Practice* § 57.01 (W. Norton, Jr. ed. 1981). (footnotes omitted).

Section 1111(b) provides a basis for a secured claim holder, whether its claim is contractually a recourse or nonrecourse security interest, to decide whether, in the context of confirmation of a plan, to have its claim treated as a recourse claim, so that it holds an allowed secured claim to the extent of the value of the security and an allowed unsecured claim for the deficiency; or to elect to have its entire claim deemed secured by the collateral and thereby waive any deficiency claim.

6 *Collier Bankruptcy Practice Guide* § 91.06 at 91–16 (A. Herzog & L. King ed. 1983).

\* \* \* \* \* \*

In enacting section 1111(b)(1), Congress intended to treat nonrecourse creditors as recourse creditors for purposes of chapter 11 of the Bankruptcy Code. Nonrecourse undersecured creditors may assert their deficiency claims just as recourse undersecured creditors may do. Section 1111(b)(1) has made the debtor's reorganization potentially more beneficial to a nonrecourse undersecured creditor than mere foreclosure would have been.

Stein, *Section 1111(b): Providing Undersecured Creditors with Postconfirmation Appreciation in the Value of the Collateral,* 56 A.Bankr.L.J. 195, 196 (1982). *See also, In re Pine Lake Village Apartment Co.,* 19 B.R. 819 (Bkrtcy.S.D.N.Y.1982); *General Electric Mortgage Corp. v. South Village, Inc. (In re South Village, Inc.),* 25 B.R. 987 (Bkrtcy.D.Utah 1982); *Practicing Under the Bankruptcy Reform Act* § 13.17 (G. Brody, W. Taggart & G. Lee ed. 1979).[2]

An order consistent with this opinion has been entered.

---

**2.** Interestingly, the chapter of *Practicing Under the Bankruptcy Reform Act,* which supports the court's conclusion, was coauthored by Herbert Weingarten, the attorney for the debtor.