In re Paul O'LEARY d/b/a Paul O'Leary Realty Trust, and Paul O'Leary as Trustee of the Paul O'Leary Realty Trust, Debtor.

Bankruptcy No. 93–19649–JNF.

United States Bankruptcy Court, D. Massachusetts.

June 22, 1995.

Jeffrey A. Schreiber, Danvers, MA, for debtor.

Richard D. Gaudreau, Salem, MA, for Objecting Parties "Zakoians".

Paula R. Chmura, Office of U.S. Trustee, Boston, MA, for U.S. Trustee.

## MEMORANDUM

JOAN N. FEENEY, Bankruptcy Judge.

### I. INTRODUCTION

■ The matters before the Court for determination are the "Motion to Strike Notice of 1111(B) [sic] Election as filed by Peter and Rose Zakoian" (the "Motion to Strike") and the United States Trustee's objection to the "Disclosure Statement with respect to Plan of Reorganization Dated March 28, 1995" filed by Paul O'Leary (the "Debtor"). Peter and Rose Zakoian (collectively the "Zakoians") timely filed a "Notice of 1111(B) [sic] Election" on April 12, 1995, approximately two weeks after the Debtor filed his Second Amended Disclosure Statement[1]. The issue raised by the Motion to Strike pertains more to the confirmability of the Debtor's plan than whether the Zakoians are entitled to make an election under 11 U.S.C. § 1111(b)(2).[2] Courts may refuse to approve

---

1. The disclosure statement that accompanied the Debtor's Plan of Reorganization dated March 28, 1995 was the Debtor's third or Second Amended Disclosure Statement.

2. Section 1111(b) provides the following:
   (b)(1)(A) A claim secured by a lien on property of the estate shall be allowed or disallowed under section 502 of this title the same as if the holder of such claim had recourse against the debtor on account of such claim, whether or not such holder has such recourse, unless—
   (1) the class of which such claim is a part elects, by at least two-thirds in amount and

more than half in number of allowed claims of such class, application of paragraph (2) of this subsection; or
   (ii) such holder does not have such recourse and such property is sold under section 363 of this title or is to be sold under the plan.
   (B) A class of claims may not elect application of paragraph (2) of this subsection if—
   (i) the interest on account of such claims of the holder of such claims in such property is of inconsequential value; or
   (ii) the holder of a claim of such class has recourse against the debtor on account of

disclosure statements that describe plans that cannot be confirmed. *See In re Bjolmes Realty Trust*, 134 B.R. 1000, 1002 (Bankr. D.Mass.1991); *In re Atlanta West VI*, 91 B.R. 620, 622 (Bankr.N.D.Ga.1988).

## II. BACKGROUND

The Debtor filed a voluntary petition under Chapter 11 on October 27, 1993. In his schedules, he listed commercial property located at 216 Main Street, North Reading, Massachusetts at which he operates an automobile lubrication business. At the commencement of the case, the property was subject to two mortgages: a first mortgage held by the Federal Deposit Insurance Corporation (the "FDIC") in the amount of $603,406.00; and a second mortgage held by the Zakoians in the approximate amount of $140,000.00.

On May 17, 1994, the Zakoians filed a Motion for Relief from Automatic Stay or, in the Alternative, for Dismissal (the "Motion for Relief"). The Motion for Relief was heard on June 15, 1994. At that time, the Court continued the hearing on the Motion for Relief for one month and ordered the Debtor to file a disclosure statement and plan of reorganization within the same time period. Subsequently, the Court continued the hearing on the Zakoians' motion until the hearing on the adequacy of the Debtor's disclosure statement. At that hearing, which was held on August 16, 1994, the Court ordered the Debtor to amend his disclosure statement, and the Zakoians and the Debtor agreed to continue the hearing on the Motion for Relief until the date of the confirmation hearing on the Debtor's plan of reorganization.

In the following months, the Debtor filed a second disclosure statement and a second plan of reorganization. The Court approved the Debtor's First Amended Disclosure Statement on October 28, 1994 and scheduled a confirmation hearing for December 12, 1994. The Internal Revenue Service, the Massachusetts Department of Revenue, the FDIC and the Zakoians objected to the Debtor's proposed plan. At the confirmation hearing, the Court continued the hearing on the objections and scheduled a valuation hearing with respect to the 216 Main Street property to determine the Motion for Relief and the propriety of the Debtor's proposed treatment of the Zakoians' claim.

Following the submission of evidence by both the Debtor and the Zakoians, the Court valued the 216 Main Street property at $580,-000.00. Two weeks after the Court issued its order valuing the Debtor's property, the Debtor filed a Status Report with respect to his negotiations with the FDIC. The Court then ordered the Debtor to file a Second Amended Disclosure Statement (the Debtor's third) because of the passage of time between the approval of the Second Amended Disclosure Statement and the reported developments with the FDIC.

On March 29, 1995, the Debtor filed his Second Amended Disclosure Statement. The United States Trustee filed an objection, and the Massachusetts Department of Revenue filed a limited objection.

The Debtor, in March 28, 1995 disclosure statement, described a plan containing six classes: Administrative claims (Class 1); Priority claims (Class 2); Real estate tax claims (Class 3); Secured claim of Ford Motor Credit (Class 4); Secured claim of FDIC (Class 5); and General unsecured claims (Class 6). The Debtor proposed to treat the Zakoians' claim as completely unsecured based upon the outstanding principal balance of the FDIC's claim ($603,406.00) and the value of the property as found by this Court ($580,000.00), *see* 11 U.S.C. § 506(a), (d)[3],

---

such claim and such property is sold under section 363 of this title or is to be sold under the plan.

(2) If such an election is made, then notwithstanding section 506(a) of this title, such claim is a secured claim to the extent that such claim is allowed.

11 U.S.C. § 1111(b).

**3.** Section 506 provides in relevant part the following:

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the

stating that "[t]he Zakoian second position mortgage shall be discharged and cancelled as of the effective date of this Plan ... [and that] ... [t]he Zakoian's [sic] shall execute and deliver to Debtor for recording a discharge of their second position mortgage prior to the closing date for the FDIC loan restructuring as set forth herein." The Debtor proposed to provide the Zakoians and the other unsecured creditors with a 10 percent dividend.[4]

The Debtor described the treatment of the FDIC claim as follows:

> FDIC shall retain its first position mortgage on the 216 Main Street property in the amount of $603,406. Debtor shall execute an amended note and amended and restated mortgage ... to FDIC for $603,406.00. This note shall provide for an initial principal reduction payment in the amount of $20,000 due at the restructuring closing. The remaining principal balance of $583,406 shall be payable over 2 years, with interest only payments over the 2 year term at a rate of interest fixed on the effective date of the plan at 6 percent. Interest only payments in the amount of $2,917.03 will be due monthly, with the first payment due 30 days after the closing. *The FDIC Reorganization Note shall further provide that the note may be prepaid any time prior to due date for a discounted payoff of $480,000.* However, in the event the FDIC Reorganization Note is not prepaid, the principal balance of $583,406 shall be due at the end of the two year term. The outstanding note and mortgage held by FDIC, prior to the commencement of this case which encumber the property at 216 Main Street, North Reading, Massachusetts, shall be restated and amended accordingly.

Second Amended Disclosure Statement dated March 28, 1995 at 12–13 (emphasis supplied).

The United States Trustee objected to the Debtor's Second Amended Disclosure Statement on a number of grounds, Including 1) the omission of a necessary class, namely the class comprised of the interest retained by the Debtor; and 2) the failure of the Debtor to apprise unsecured creditors that, to the extent that he employs the cramdown provisions of section 1129(b)[5], the plan, to be

---

amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.... (d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless—
   (1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or
   (2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.
11 U.S.C. § 506(a), (d).

4. The Zakoians' claim is recourse against the Debtor. Courts are divided as to whether nonrecourse claims that are totally unsecured can be treated as general unsecured claims as a result of section 1111 of the Bankruptcy Code. *Compare In re SM 104 Ltd.*, 160 B.R. 202, 215–16 (Bankr. S.D.Fla.1993) (holder of totally unsecured, nonrecourse "claim" does not have a claim, is not a creditor, and is not entitled to any distribution from the estate) *with In re Atlanta West VI*, 91 B.R. 620, 623 (Bankr.N.D.Ga.1988) (holder of totally unsecured, nonrecourse claim is entitled to treatment as an unsecured creditor).

5. Section 1129(b) provides the following:

(b)(1) Notwithstanding section 510(a) of this title, if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.
   (2) for the purpose of this subsection, the condition that a plan be fair and equitable with respect to a class includes the following requirements:
      (A) With respect to a class of secured claims, the plan provides—
      (i)(I) that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims; and
      (II) that each holder of a claim of such class receive on account of such claim deferred cash payments totalling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property;
      (ii) for the sale, subject to section 363(k) of this title, of any property that is subject to

confirmable, must provide for the payment of unsecured claims in full before the Debtor may retain any property in accordance with the so-called absolute priority rule. *See* 11 U.S.C. § 1129(b)(2)(B)(ii).

At the conclusion of the hearing on the adequacy of the Debtor's third disclosure statement, the Court took the United States Trustee's objection under advisement as well as the Debtor's Motion to Strike the Zakoians' section 1111(b) election.

## III. POSITIONS OF THE PARTIES

The Debtor relies upon the Court's valuation of the 216 Main Street property, the FDIC's allowed claim in the amount of $603,-406.00, and the plain language of section 1111(b)(1)(B)(i) to argue that the Zakoians are unsecured creditors who are not entitled to make the section 1111(b)(2) election. The Debtor maintains that the Zakoians' objection to the consequences of the settlement with the FDIC, namely a potential windfall to the Debtor to the extent that the Main Street property is sold for a sum in excess of the discounted payoff figure, is "based entirely on speculative events and is inconsistent with the law...."

The Zakoians maintain that their lien is not of inconsequential value and that the success of the Debtor's plan hinges on the Debtor's ability to pocket the difference between the payoff figure to the FDIC and the sale price of the property. Neither party addressed section 1111(b)(1)(B)(ii) concerning the inability of a class of recourse claims to make the section 1111(b)(2) election if property is to be sold under section 363 or a plan of reorganization.

> the liens securing such claims, free and clear of such liens, with such liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds under clause (i) or (iii) of this subparagraph; or
> (iii) for the realization of such holders of the indubitable equivalent of such claims.
> (B) With respect to a class of unsecured claims—
> (i) the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or

## IV. DISCUSSION

■ The Zakoians' arguments are compelling but the remedy they seek, the right to make the section 1111(b)(2) election, is miscast. The Court recognizes the Debtor's tactic in effectively "whipsawing" the Zakoians. On the one hand, the Debtor holds out the availability, at least theoretically, of $100,-000.00 arising from the negotiated agreement with the FDIC ($580,000.00 value minus $480,000.00 payoff), which sum, absent section 506(d), would be available to satisfy junior liens on the 216 Main Street property. On the other hand, the Debtor argues that the Zakoians, as wholly unsecured creditors as a result of the Court's valuation of the property, have no right to make an election under section 1111(b)(2).

■ The law is unequivocal that a completely unsecured creditor is not entitled to make an election. *See In re Union Meeting Partners*, 178 B.R. 664, 680 (Bankr.E.D.Pa. 1995); *In re 500 Fifth Avenue Assocs.*, 148 B.R. 1010, 1016 (Bankr.S.D.N.Y.1993); *In re Stratford Assocs. Ltd. Partnership*, 145 B.R. 689, 700–01 n. 15, 17 (Bankr.D.Kan.1992); *In re Atlanta West VI*, 91 B.R. 620, 624 (Bankr. N.D.Ga.1988); *In re Rosage*, 82 B.R. 389, 390–91 (Bankr.W.D.Pa.1987); *In re Baxley*, 72 B.R. 195, 198–99 (Bankr.D.S.C.1986). Nevertheless, the Debtor's agreement with the FDIC triggers issues with respect to his plan's compliance with subsections 1129(b)(1) and (b)(2)(B)(ii), because the reduced payoff of the FDIC obligation has potentially the same practical effect as appreciation in value of the property, which appreciation the section 1111(b)(2) election is designed to capture.[6]

> (ii) the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property....
>
> 11 U.S.C. § 1129(b).

**6.** An example clarifies the picture. Assuming the Debtor sold the property for $580,000.00 within two years and paid the FDIC $480,000.00, the Debtor would realize $100,000.00, not counting costs of sale. The Debtor would also realize $100,000.00 if the property appreciated in value to $703,000 and the FDIC was paid $603,000.00. Under the latter circumstance, and assuming

In view of the above, the Court reads the Zakoians' section 1111(b)(2) election as a statement that the Debtor's proposed plan is neither fair nor equitable. The Debtor's failure to provide a mechanism in the plan for the distribution of the difference between the payoff sum of $480,000.00 to the FDIC and any sales price received in excess of that sum to the Debtor's unsecured creditors violates the absolute priority rule codified in section 1129(b)(2)(B)(ii). Accordingly, the Debtor's proposed plan is not confirmable and the United States Trustee's objection to the disclosure statement is sustained.

## V. CONCLUSION

In accordance with the foregoing, the Court sustains the United States Trustee's objection to the Debtor's disclosure statement. The Court shall take no action on the Debtor's Motion to Strike at this time. An appropriate order shall enter.

## ORDER

In accordance with the Memorandum dated June 22, 1995, the Court sustains the United States Trustee's objection to the Debtor's "Disclosure Statement with respect to Plan of Reorganization Dated March 28, 1995." The Court takes no action on the Debtor's "Motion to Strike Notice of 1111(B) Election as filed by Peter and Rose Zakoian" at this time. The Court orders the Debtor to appear on July 26, 1995 at 11:00 A.M. to show cause why his case should not be converted to a case under Chapter 7 or dismissed for failure to propose a confirmable plan within a reasonable amount of time. *See* 11 U.S.C. § 1112(b).

that the Zakoians could make an election under section 1111(b)(2), the Zakoians' second mortgage, which the Debtor seeks to discharge under his plan, would be satisfied at least in part.