In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-2241

IN RE:

B.R. BROOKFIELD COMMONS
NO. 1 LLC, *et al.*,

*Debtors-Appellants*,

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 2:13-cv-00310-JPS — **J. P. Stadtmueller**, *Judge.*

ARGUED SEPTEMBER 13, 2013 — DECIDED NOVEMBER 4, 2013

Before BAUER, FLAUM, and ROVNER, *Circuit Judges.*

BAUER, *Circuit Judge.* In this bankruptcy proceeding, the
creditor, ValStone Asset Management, LLC ("ValStone"),
succeeded to the rights of a second mortgage secured by a lien
on a shopping center owned by the debtor, B.R. Brookfield
Commons No. 1, LLC and B.R. Brookfield Commons No. 2,
LLC ("Brookfield"). Brookfield argues that because the second
mortgage is a nonrecourse loan, and there was no equity in the
shopping center at the time of the bankruptcy filing, the claim
on the bankrupt estate should be disallowed. Both the bank-
ruptcy court and the district court held that the claim was
valid. We agree with the lower courts and affirm.

## I.  BACKGROUND

Brookfield owns a commercial shopping center ("Brookfield Property") that serves as the collateral for two mortgages. The first mortgage, in the amount of approximately $8,900,000, is held by TS7-E Grantor Trust. ValStone serves as attorney in fact for TS7-E Grantor Trust. Integrity Development held the second mortgage in the amount of approximately $2,539,375 ("Integrity Claim"), but has since transferred its interest to ValStone. ValStone now holds an interest in both the first and second mortgage claims.

The Integrity Claim is a nonrecourse loan agreement[1] that is secured by a lien on the Brookfield Property. Brookfield and ValStone do not dispute that the lien is valid and enforceable. Outside of bankruptcy proceedings, state law would allow ValStone to foreclose on the Brookfield Property upon Brookfield's default on the loan. ValStone could bid on the Brookfield Property at auction or receive proceeds from the sale of the Brookfield Property at market value. However, since the Integrity Claim is a nonrecourse loan, if the proceeds from the sale were not enough to repay the first mortgage or repay the Integrity Claim in full, ValStone would be barred from pursuing a deficiency claim for the outstanding debt; ValStone never initiated foreclosure proceedings under state law.

---

[1]    A nonrecourse loan limits a Creditor to look only to the Debtor's collateral for repayment. *Bank of Am. Nat'l Trust and Sav. Ass'n v. 203 N. LaSalle St. P'ship,* 526 U.S. 434, 438 (1999).

On June 10, 2011, Brookfield filed its Chapter 11 bankruptcy petition. Unique to a Chapter 11 bankruptcy proceeding, Brookfield is allowed to reorganize its debts and still retain ownership in the Brookfield Property. It listed both the TS7-E Grantor Trust first mortgage and the Integrity Claim as secured claims on Schedule D of the bankruptcy petition. Under its reorganization plan, Brookfield elected to retain ownership of the Brookfield Property rather than selling it. Brookfield's election required the bankruptcy court to establish a judicial value for the Brookfield Property by means of independent appraisals. Though a judicial valuation for the Brookfield Property has not yet been established, both Brookfield and ValStone expect that the value will be less than the amount of the first mortgage. So, absent a significant and unexpected increase in value, the Integrity Claim, which is second in priority, will be totally unsecured by any equity in the Brookfield Property.

At issue before this Court is the validity of the Integrity Claim. Brookfield objects to the validity of the Integrity Claim, because it is not secured by any value in the Brookfield Property. Brookfield argues that this totally unsecured, nonrecourse loan should be disallowed because neither state law nor 11 U.S.C. § 1111(b) allows ValStone to pursue a deficiency claim against Brookfield. ValStone, on the other hand, argues that 11 U.S.C. § 1111(b)(1)(A) treats its nonrecourse Integrity Claim as if it had recourse, and its unsecured deficiency claim should be allowed.

The issue surrounding the validity of the Integrity Claim is no stranger to review in this jurisdiction. Brookfield raised this

issue twice in the bankruptcy court, and sought review from the district court as well. We now address the issue.

## II.  DISCUSSION

We review a district court's decision to affirm the bankruptcy court's allowance of a claim *de novo*. *In re Boone County Utilities., LLC*, 506 F.3d 541, 542 (7th Cir. 2007).

The only issue before this Court is whether the Integrity Claim should be disallowed. The decision turns on the interpretation of § 1111(b)(1)(A). This is an issue of first impression in this Circuit; we have found no controlling law on this issue. So, following the well-established principles of statutory construction, we first look to the language of the statute. *Greenfield Mills, Inc. v. Macklin,* 361 F.3d 934, 954 (7th Cir. 2004). The text of § 1111(b)(1)(A) reads:

> A claim secured by a lien on property of the estate shall be allowed or disallowed under section 502 of this title the same as if the holder of such claim had recourse against the debtor on account of such claim, whether or not such holder has such recourse.

In this case, the district court found that, "[t]he plain meaning of § 1111(b)(1)(A) is clear and unambiguous … There is one prerequisite: the claim is secured by a lien on the property of the estate." The district court's plain reading is consistent with the Second Circuit's interpretation of § 1111(b)(1)(A).

In *In re 680 Fifth Avenue Associates*, the Second Circuit held that the protections of § 1111(b) were not limited by a lienholder's contractual privity with the debtor. 29 F.3d 95 (2d

Cir. 1994). In *680 Fifth Avenue,* the debtor purchased real estate subject to an existing nonrecourse mortgage. *Id.* at 96. When the debtor filed for Chapter 11 bankruptcy, the market value of the real estate was insufficient to cover the full amount of the indebtedness. *Id.* The court interpreted § 1111(b)(1)(A) to address whether a nonrecourse lienholder, not in privity with the debtor, could assert a deficiency claim against the debtor's estate. *Id.* at 96–97. The Second Circuit agreed with the bankruptcy court's reasoning that:

> The plain meaning of § 1111(b) does not limit itself to consensual or nonconsensual liens. Moreover, § 1111(b) is not limited to nonrecourse loans or to claims where the lienholder is in privity with the debtor. The *only precondition* to the statute's application is a claim secured by a lien on property of the estate.

*Id.* (emphasis added). Similarly, we agree with the district court's finding in this case that the statute does not state that the claim be secured by any value in the property of the estate, and that the only prerequisite is that a claim be "secured by a lien on property of the estate." It is uncontested that the Integrity Claim is secured by a valid lien against the Brookfield Property. The language of § 1111(b)(1)(A) is plain, and the Integrity Claim shall be treated as if it had recourse against Brookfield.

If the language of the statute is plain, our only function is to enforce the statute according to its terms. *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241 (1989). However, the parties cite opposing cases that differ in their interpretation of

*how* to enforce § 1111(b)(1)(A). Brookfield primarily relies on *In re SM 104 Ltd.*, in which the bankruptcy court interpreted § 1111(b)(1)(A) to disallow a creditor's nonrecourse lien claim completely because it was totally unsecured by any value in the collateral. 160 B.R. 202, 216 (Bankr. S.D. Fla. 1993). ValStone cites to *In re Atlanta West VI*, in which the bankruptcy court reached the conclusion that § 1111(b)(1)(A) requires a totally unsecured, nonrecourse claim to "be classified and provided for in [the] debtor's plan." 91 B.R. 620, 624 (Bankr. N.D. Ga. 1988).

This Court recently recognized "the danger of such differing interpretations, stating '[n]ot only is the rule against multiple interpretations of the same statute well entrenched, it is of special importance. Without it, even a statutory term used but a single time in a single statute risks never settling on a fixed meaning.'" *In re Ryan*, 725 F.3d 623, 628 (7th Cir. 2013) (quoting *In re Woolsey*, 696 F.3d 1266, 1277–78 (10th Cir. 2012)). Because we are concerned about the differing interpretations of the statute, "we look to the legislative history of the statute to guide our interpretation." *Kelly v. Wauconda Park Dist.*, 801 F.2d 269, 270 (7th Cir. 1986).

And, the Congressional Records of the U.S. House and U.S. Senate describe § 1111(b)(1) as, "the general rule that a secured claim is to be treated as a recourse claim in chapter 11 whether or not the claim is nonrecourse by agreement or applicable law. This preferred status for a nonrecourse loan terminates if the property securing the loan is sold under section 363 or is to be sold under the plan." 124 Cong. Rec. 32406 (1978); *see also* 124 Cong. Rec. 34006 (1978).

So, the congressional record alone does not provide full guidance on the function and enforcement of the statute at issue. However, consideration of the case law that led Congress to enact § 1111(b) is instructive. Congress enacted § 1111(b) in response to the harsh result in *Pine Gate Associates*, when a debtor used the "cramdown" powers to avoid a nonrecourse creditor's undersecured deficiency claim. *Great Nat'l Life Ins. Co. v. Pine Gate Associates, Ltd.*, 2 B.C.D. 1478 (Bankr. N.D. Ga. 1976). In *Pine Gate,* the lender financed an apartment project on a nonrecourse basis, expecting either full payment of the loan or the right to foreclose on the property as the negotiated benefit of the bargain. *Id.* At a time when real estate prices were depressed, the debtor filed bankruptcy under Chapter XII of the former Bankruptcy Act. *Id.* Under the former Code, the debtor retained ownership of the apartment project and was able to "cash out a nonrecourse, undersecured holder of a first priority security deed at the value of the debtor's property instead of the amount of the debt." *In re Atlanta West VI*, 91 B.R. at 623 (describing the facts in *Pine Gate*). The debtor received the benefit of any future appreciation in the property, while the creditor received no payment on its undersecured deficiency claim. *Id*. Thus, the former Code left the creditor with neither full payment of the loan nor the right to foreclose on the property, resulting in a windfall to the debtor.

*Collier on Bankruptcy* suggests that the purpose behind the addition of § 1111(b) to the bankruptcy code was to "strike a balance between the debtor's need for protection and a creditor's right to receive equitable treatment." 7 *Collier on Bankruptcy* ¶ 1111.03 (Alan N. Resnick & Henry J. Sommer eds.,

16th ed. 2013). The judicial valuation specific to a Chapter 11 reorganization deprives a lienholder of the right to bid on the collateral and the opportunity to "benefit from any unantici-pated post-valuation appreciation." *In re 680 Fifth Avenue Associates*, 29 F.3d at 97. Congress promulgated § 1111(b)(1)(A) to allow a creditor's loan to surpass the limitations of nonre-course agreements and state law, and instead receive treatment as a recourse claim because the judicial valuation specific to Chapter 11 "was not part of a nonrecourse creditor's bargain." 7 *Colliers on Bankruptcy* ¶ 1111.03[1][a] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2013). Application of § 1111(b) prevents a windfall to the debtor, and "puts the Chapter 11 debtor who wishes to retain collateral property in the same position as a person who purchased property 'subject to' a mortgage lien would face in the nonbankruptcy context." *In re 680 Fifth Avenue Associates*, 29 F.3d at 97. After full consider-ation of the legislative history of § 1111(b), it is apparent that the district court's interpretation of § 1111(b)(1)(A) is congru-ent with Congress' intent to strike a balance between debtor protections and equitable treatment of creditors.

We agree with ValStone that the facts and analysis in *Atlanta West* are analogous to this case. In *Atlanta West*, the debtor proposed retaining a commercial office park under its reorganization plan. 91 B.R. at 621. Three liens existed on the commercial office park; the third lien was totally unsecured by any equity in the property. *Id.* at 622. The *Atlanta West* court analyzed the plain meaning, legislative intent, and case law relevant to § 1111(b) to conclude that the "statute does not require that the lien on the property be secured by actual value" and the creditor "cannot be denied a claim as debtor

proposes." *Id.* at 624. Here, Brookfield cannot dispute that the Integrity Claim is secured by a lien on the Brookfield Property, which is the only prerequisite for the application of § 1111(b)(1)(A). The value in the collateral is immaterial; § 1111(b)(1)(A) treats the Integrity Claim as a recourse loan for purposes of Brookfield's Chapter 11 reorganization and ValStone's Integrity Claim cannot be disallowed.

Brookfield's contention that the analysis of the Integrity Claim begins with the application of 11 U.S.C. § 506(a), referenced in 11 U.S.C. § 1111(b)(2), is unpersuasive. That position is inconsistent with the plain reading and the logical flow of § 1111(b).

The facts and, more importantly, the analysis conducted in Brookfield's keystone case, *SM 104*, are distinguishable from this case. *In re SM 104 Ltd.*, 160 B.R. at 216. There are two similar facts from *SM 104* to this case. First, the collateral was fully encumbered by the first mortgage claim, leaving no equity for the second mortgage claim. *Id.* at 209. And, the second mortgage was a nonrecourse loan. *Id.* However, that is where the similarity between *SM 104* and this case ends. The *SM 104* court summarily decided that:

> Since Capital Bank's mortgage is junior to EquiVest's mortgage, it necessarily follows that the value of Capital Bank's interest in the property of the Debtor, and thus the amount of its secured claim and lien, is zero. *See* 11 U.S.C. § 506(a). Accordingly, Capital Bank does not hold a 'claim secured by a lien on property of the estate' and does not have a § 1111(b) deficiency claim. *See* 11 U.S.C.

> § 1111(b)(1)(A). In addition, since the loan is nonre-
> course, § 502(b)(1) prevents Capital Bank from
> maintaining any unsecured deficiency claim. Since
> Capital Bank has no right to payment from the
> Debtor or the Debtor's property, it is not a creditor
> of the Debtor.

*Id.* at 216. In the course of its § 1111(b) analysis, the *SM 104* court denied the junior mortgage's entire claim, and along with it, the creditor's right to vote on the debtor's plan. The *SM 104* court did not consider bankruptcy treatises, legislative history, persuasive cases, or controlling cases during its statutory interpretation. This Court does not adopt the outlier opinion proposed by Brookfield.

### III. CONCLUSION

We hold that under § 1111(b)(1)(A), the existence of a valid and enforceable lien is the only prerequisite for § 1111(b)(1)(A) to apply. Regardless of whether the claim is secured by any value in the collateral, § 1111(b)(1)(A) treats the nonrecourse Integrity Claim as if it had recourse against Brookfield.

The decisions of the bankruptcy court and the district court are hereby AFFIRMED.