In the

# United States Court of Appeals
## For the Seventh Circuit

No. 12-3398

IN RE:

PATRICK J. RYAN,

*Debtor-Appellant.*

PATRICK J. RYAN,

*Plaintiff-Appellant,*

*v.*

UNITED STATES OF AMERICA,

*Defendant-Appellee.*

On Appeal from the
United States Bankruptcy Court for the
Northern District of Illinois, Eastern Division.
No. 11 B 34346—**A. Benjamin Goldgar**, *Judge.*

ARGUED APRIL 15, 2013—DECIDED JULY 8, 2013

Before RIPPLE, ROVNER, and WILLIAMS, *Circuit Judges*.

ROVNER, *Circuit Judge*. Patrick James Ryan failed to pay his federal income taxes for 2006, 2007, 2008, 2009, and 2010, resulting in outstanding liabilities totaling at least $136,898.93. In January 2011, pursuant to Internal

Revenue Code § 26 U.S.C. 6323, the IRS recorded a notice of federal tax lien against Ryan's possessions with the Cook County Recorder of Deeds with respect to the liabilities for 2006-09.

On August 23, 2011, Ryan filed a voluntary Chapter 13 bankruptcy petition. 11 U.S.C. §§ 1301 et seq. At that time, he had personal possessions worth $1,625. He subsequently filed an adversary proceeding entitled "Complaint to Determine Nature and Extent of Federal Tax Lien," in which he admitted that he owed tax liabilities for 2006 through 2010 and that a federal tax lien had been recorded for liabilities for 2006 through 2009. He further alleged that his residence had been sold for delinquent real estate taxes and that he did not own a bank account, vehicle, or retirement account. Because the total value of his possessions was $1,625, Ryan alleged that pursuant to Bankruptcy Code § 506(a), the IRS's secured claim for the 2009 tax was limited to that amount, and that the remainder of the IRS's claim was unsecured. 11 U.S.C. § 506(a). Ryan also asserted that under Bankruptcy Code § 506(d), the amount of the tax lien that exceeded $1,625 was void. 11 U.S.C. § 506(d).

Section 506(a) of the Bankruptcy Code separates loans into secured and unsecured portions. *In re Wright,* 492 F.3d 829, 830 (7th Cir. 2007). As we explained in *In re Howard*, 597 F.3d 852, 854 (7th Cir. 2010), "[t]he bankruptcy judge first determines the market value of the collateral . . . [and] [t]he creditor's claim is treated as a secured claim to the extent of that value." If the value is less than the unpaid balance of the secured loan, the

difference is considered an unsecured claim of the creditor. *Id.*; 11 U.S.C. § 506(a)(1). Here, the United States conceded that pursuant to § 506(a), its secured claim was limited to $1,625 for purposes of plan confirmation, but maintained that § 506(d) did not authorize the bankruptcy court to void the federal tax lien to the extent that it exceeded $1,625. The bankruptcy court sided with the government, holding that § 506(d) as interpreted by the Supreme Court in *Dewsnup v. Timm*, 502 U.S. 410 (1992), did not allow Ryan to void, or "strip down" the lien, and granted judgment on the pleadings under Fed. R. Civ. P. 12(c). The sole issue on appeal is whether the bankruptcy court erred in that determination.

Section 506(d) of the Code provides:

> (d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless—

> (1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or

> (2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

11 U.S.C.A. § 506. In *Dewsnup*, the Supreme Court considered the proper interpretation of that language, and held that §§ 506(a) and 506(d) did not have to be read together, and that the term "allowed secured claim" in § 506(d) was not defined by reference to § 506(a). Instead, the Court determined that, consistent with pre-Code rules that liens pass through bankruptcy unaffected, the

term "allowed secured claim" in § 506(d) means a claim that is, first, allowed under § 502 and, second, secured by a lien enforceable under state law, without regard to whether that claim would have been deemed secured or unsecured under § 506(a). *Id.* at 777-78; *In re Woolsey*, 696 F.3d 1266, 1273 (10th Cir. 2012). Under that interpretation, Ryan would not be entitled to void the lien in this case. With the exception of a conclusory argument without adequate development or citation, Ryan does not dispute that the lien is allowed and secured if the *Dewsnup* interpretation is applied to this Chapter 13 context, and that argument is therefore waived (and is, in any event, meritless). *Bank of America, N.A. v. Vluechamy*, 643 F.3d 185, 189-90 (7th Cir. 2011) ; *MMG Financial Corp. v. Midwest Amusements Park, LLC*, 630 F.3d 651, 659 (7th Cir. 2011). Instead, Ryan contests the applicability of the *Dewsnup* interpretation to the Chapter 13 context at all.

Ryan maintains that § 506(d) should be interpreted differently in his case than in *Dewsnup* because his petition was filed under Chapter 13 whereas *Dewsnup* involved Chapter 7. Ryan points out that in defining the terms in § 506(d), the court focused on the concerns underlying Chapter 7 bankruptcy and interpreted it in a manner consistent with those concerns. Unlike Chapter 7, Chapter 13 involves a different set of concerns, with its goal of reorganization and repayment without necessitating the liquidation of assets. See *Thompson v. General Motors Acceptance Corp., LLC*, 566 F.3d 699, 705 (7th Cir. 2009).

The obvious problem with that argument is that § 103(a) of the Code states that: "Except as provided in section 1161 of this title, chapters 1, 3, and 5 of this title apply in a case under chapter 7, 11, 12, or 13 of this title . . . ." 11 U.S.C. § 103. The exception in § 1161 is inapplicable here, as it merely provides that certain sections of the Code do not apply "in a case concerning a railroad." Accordingly, § 506(d), which is part of Chapter 5, applies equally to cases under Chapter 7 and Chapter 13. In fact, Ryan does not contest that under § 103(a), § 506(d) applies to both Chapter 13 and Chapter 7 petitions, and he does not seek to carve out an exception to that rule for § 506(d). Instead, his argument is that the language in § 506(d) should be interpreted differently in Chapter 13 than in Chapter 7 cases because to hold otherwise would be contrary to the purposes of those statutory vehicles. This argument is not based on any language in § 506(d) that would signal differential treatment. In fact, the language of § 506(d) is straightforward, and does not indicate any intent for the terms to have meanings that differ based upon the circumstances. To the contrary, § 103(a) provides clear evidence that § 506(d) was to apply equally to Chapters 7 and 13.

In a transparent attempt to avoid that straightforward application, Ryan asserts that the Supreme Court in *Dewsnup* was not really interpreting the term "allowed secured claim" differently in § 506(d) than § 506(a), but rather was simply adding an anti-modification provision in § 506(d) for Chapter 7 cases. That argument is so at odds with the plain language of *Dewsnup* as to be

created from whole cloth. Nothing in *Dewsnup* indicated that the Court was adding an anti-modification provision to § 506(d) that would apply to Chapter 7 cases alone, and in fact, it would be beyond remarkable for the Supreme Court to simply fabricate its own statutory provision. There is no basis in law or fact for this argument.

Ryan is left, then, with arguing that we should interpret § 506(d) differently in Chapter 13 in order to fulfill the purposes of Chapter 13, and because a contrary interpretation would leave him without a remedy. In support of that argument, Ryan sets forth at length the deleterious impact that such an interpretation would have on the bankruptcy code in general and on individual debtors. There are multiple problems with this argument. First, many courts and commentators have noted that Chapter 13 provides alternative means of voiding liens, and therefore the absence of that option under § 506(d) does not necessarily leave a petitioner without any means of achieving that goal. See *Woolsey*, 696 F.3d at 1278-79 and cases cited therein; 4 Collier on Bankruptcy ¶ 506.06 [1][c] (16th ed. 2013) ("Collier"). In fact, Ryan's interpretation does not achieve statutory harmony as he suggests, because it could render more specific language in Chapter 13 irrelevant. As a leading bankruptcy treatise discussed, § 506(d) applied as Ryan suggests would provide lien stripping without any of the safeguards set forth in §§ 1129(b), 1225, and 1325 governing the treatment of secured claims and lien rights. Collier at ¶ 506.06 [1][c]. For instance, § 1123(b)(5) permits the proponent of a plan to modify the rights of

holders of secured claims "other than a claim secured only by a security interest in real property that is the debtor's principal residence . . .," but that provision would be entirely subsumed within an interpretation of § 506(d) that allowed the adjustment of the lien rights without any such exceptions or limitations. *Id.*

Ryan argues that the alternative remedies identified by those courts and commentators are not in fact available here and that even if generally available, they are not options for him because the United States has not waived its sovereign immunity with respect to those provisions. There is no support for basing statutory interpretation on the government's decision to waive, or not waive, sovereign immunity. In fact, that argument reveals the underlying problem with Ryan's position here. He encourages us to read the terms in a manner that maximizes the Congressional intent, but for Ryan that is dependent here on the Chapter involved and the government's decision not to waive sovereign immunity. Our role in interpreting a statute does not extend to rewriting that statute based upon the individual circumstances of each litigant to ensure that Congressional purposes are attained. It is the province of the legislature to choose language that maximizes its own purposes, and for the courts to give that language its plain meaning or, where it is ambiguous, to interpret it in the manner most consistent with the statutory language as a whole, its purpose, and in a manner that will render it constitutional.

The Supreme Court in *Clark v. Martinez*, 543 U.S. 371 (2005), addressed a similar argument that a statute

should be given differing meanings based on divergent applications, and the court held that the language of a statute should be read consistently. In *Clark*, the Court considered a statute that provided that aliens "may be detained beyond the removal period" if they were (1) inadmissible under 8 U.S.C. § 1182, (2) removable under 8 U.S.C. §§ 1227(a)(1)(C), (a)(2), or (a)(4), or (3) determined to be at risk to the community or unlikely to comply with an order of removal. *Id.* at 377. In an earlier opinion in *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Court had held that for aliens in the second category, the provision authorized detention only as long as reasonably necessary to remove the aliens from the country. The question in *Clark* was whether that construction applied to aliens in the first category as well. 543 U.S. at 377-78. The *Clark* Court noted that in *Zadvydas* it had stated that "[a]liens who have not yet gained initial admission to this country would present a very different question." *Id.* at 378. In fact, the Court in *Clark* did not contest that the statutory purpose and the constitutional concerns that influenced the statutory construction in *Zadvydas* were not present for aliens in the first category such as the ones before it in *Clark*. *Id.* at 380.

The Court nevertheless held that such disparity cannot justify giving the statute a different meaning for one set of aliens than another, noting that "[i]t is not at all unusual to give a statute's ambiguous language a limiting construction called for by one of the statute's applications, even though other of the statute's applications, standing alone, would not support the same limitation." *Id.* Because the operative language of the

statute applied without differentiation to all three categories of aliens, the Court held that the meaning must be consistent because "[t]o give these same words a different meaning for each category would be to invent a statute rather than interpret one." *Id.* at 378.

Section 506(d) similarly does not distinguish claims under Chapter 7 from those under Chapter 13. The language is uniform and does not lend itself to any differential treatment, and § 103(a) renders the provision applicable to Chapter 7 and Chapter 13 without distinction. Similar to the situation in *Clark*, because the statute applies to Chapter 7 and Chapter 13 without distinction, to give those words a different meaning for Chapter 13 than Chapter 7 would be to invent a statute rather than interpret it.

Ryan relies on court decisions that have refused to extend the interpretation of "secured" in § 506(d) to other provisions within § 506, but the two arguments are not congruous. It is rare enough to interpret the same language differently in distinct statutory sections, but is an entirely different matter for a court to give a term a different meaning in the same statutory provision. See *Woolsey*, 696 F.3d at 1277 and cases cited therein. It is the latter argument that the Court rejected in *Clark*. *Id.*

The Tenth Circuit in *Woolsey*, 696 F.3d 1266, addressed the precise issue before us today in a thorough decision, concluding that the *Dewsnup* interpretation of § 506(d) applied equally to a Chapter 13 petition and in fact our analysis above parallels that court's decision. Although noting the substantial criticism directed at the

*Dewsnup* opinion, and the rejection of that interpretation in other bankruptcy sections, the *Woolsey* court held that under *Clark*, the language should be given a consistent interpretation. *Id.* at 1272-78. In light of § 103(a), which applies the provisions of § 506(d) to Chapter 13 as well as Chapter 7, and *Clark*, the *Woolsey* court held that there was no reasoned basis to give § 506(d) one meaning in the Chapter 7 context and a different meaning in the Chapter 13 situation. *Id.* at 1277. In fact, the *Woolsey* court emphasized the danger of such differing interpretations, stating:

> Not only is the rule against multiple interpretations of the same statute well entrenched, it is of special importance. Without it, even a statutory term used but a single time in a single statute risks never settling on a fixed meaning. And this surely would leave citizens at sea, only and always guessing at what the law might be held to mean in the unique "fact situation" of the next case—a result in no little tension with the rule of law itself.

*Id.* at 1277-78. We agree with *Woolsey*, and join it in holding that the Court's interpretation of § 506(d) in *Dewsnup* applies in Chapter 13 cases as well. Ryan fails to raise or properly develop any other meritorious arguments. Accordingly, the decision of the bankruptcy court is AFFIRMED.