IN RE: Robert J. HEGEDUIS and Kerri M. Hegeduis, Debtors.

Robert J. Hegeduis and Kerri M. Hegeduis, Plaintiffs,

v.

Harris, N.A., Defendant.

CASE NO. 10–21904 jpk
ADVERSARY NO. 12–2203

United States Bankruptcy Court,
N.D. Indiana, Hammond Division.

Signed January 23, 2015

Daniel W. Matern, Law Office of Jason R. Moseley, Merrillville, IN, for Plaintiffs.

Adham Alaily, Ehrenberg & Egan, LLC, Chicago, IL, for Defendant.

*MEMORANDUM OF DECISION*

J. Philip Klingeberger, Judge, United States Bankruptcy Court

This adversary proceeding is about applying principles of quantum mechanics to the issue at hand. That issue is the "critical event" point in a Chapter 13 case at which one is to measure the value of residential real estate, and the extent/amount of other secured claims on that real estate,

for the purpose of determining if a security interest may be "stripped" by a Chapter 13 plan pursuant to 11 U.S.C. § 1322(b)(2).

As we explore this issue, it is important to keep in mind the following principles:

1. A consequence of the theory of special relativity, as announced in Albert Einstein's 1905 paper "On the Electrodynamics of Moving Bodies", described in *Wikipedia* as follows:

Relativity of simultaneity: Two events, simultaneous for one observer, may not be simultaneous for another observer if the observers are in relative motion.

2. The principal of indeterminacy—more commonly known as the Heisenberg uncertainty principle, stated as follows on the website of the American Institute of Physics:

The more precisely the position is determined, the less precisely the momentum is known in this instant, and vice versa.

The goal is to derive a critical event point which operates in a consistently predictable manner in all circumstances in which security interest stripping is to be applied. This goal will be met only if two separate hypothetical Chapter 13 cases having identical factual foundations will obtain the same result, i.e., in terms of relativity of simultaneity, observations made by an observer in one case will be simultaneous with those made by an observer in the other case.[1]

[1]. As a 10th grade algebra student, I read Einstein's book explaining his Special Theory of Relativity. I didn't understand the mathematics at all, but I liked the pictures. The theory was illustrated with drawings based upon two trains approaching each other from opposite directions, coupled with a stationary platform before which those trains passed. To Illustrate various parts of the theory, at times an observer was placed on the platform, and at times observers were placed on each one of the passing trains. For the purposes of our discussion, posit two separate Chapter 13 bankruptcy cases, with an observer placed on a platform which can be variously located at any point throughout the case. In each case, at every particular point in the case, the valuation of real estate and of other secured claims affecting the stripping analysis is the same—only the observational platform changes in relation to the point in the case at which those values are viewed. Although this construct is hypothetical, it is submitted that a determination of the critical event point

There are many published court decisions on the issue at hand; they variously address possible critical event points in a Chapter 13 case at which valuation is to be measured. Now posit that the two events in the relativity of simultaneity corollary are: (1) The critical event point in the case at which valuation is to be measured, and (2) the actual valuations of residential real estate and of the claims to be included in the stripping analysis at any particular point. The time frame of the case is always in relative motion forward from the date of the petition, and in practical fact is always in relative motion forward from the date upon which valuations relative to the date of the petition were made. Additionally, as one moves the critical event platform forward in a case beyond the petition date, the valuation of the target real property and of security interests or other liens which may affect the stripping analysis may increase or decrease from the fixed petition date point.[2] It is this author's view that the more the analysis focuses on the valuation platform rather than the critical event platform, the more likely it is that differential results will be obtained in what should be "simultaneous" cases. This is particularly true if the valuation platform is placed at a point at which an adversary proceeding or contested matter to determine whether a security interest may be stripped is filed, or at which that action is determined by trial and/or final order of the court. If the valuation platform drives the analysis, the result of the process is not consistently predictable in relation to our two posited otherwise identical cases. This is an abhorrent result in both physics and in bankruptcy cases.

It must additionally be borne in mind that because of the manner in which evidence of value must necessarily be derived, one cannot actually determine valuation of residential real estate as of a discreet critical event point in a Chapter 13 case. The valuation is always a relative concept in relation to that event point, because in practical terms the primary evidence of valuation will not have been made as of the critical event point date.

The analysis customarily made with respect to the issue at hand is phrased in terms of the point in a Chapter 13 case at which valuations relative to the stripping of a security interest are to be made. As stated above, the phrasing of the issue in that manner is not analytically accurate. What is really being determined is the critical event point in a Chapter 13 case at which the *consequence* of valuation is to be determined in light of the purpose of the valuation. The valuation itself is a relative concept in relation to any particular event point in a case, and is not itself an absolute concept. If one were to define the issue in terms of a definite valuation date, in accord with the Heisenberg uncertainty principle, the more precisely one seeks to utilize the valuation platform, the less predictable and constant will be the critical event point.

The issue in this case may be more analytically accurately stated as follows:

In the time continuum of a Chapter 13 case, to what critical event point in the case should evidence material to issues

which will not achieve the same result in each case is an analysis to be avoided.

By the way, having read the book, I can't wait to see the movie.

2. Not only may the actual value of the property fluctuate up or down, but the amount of claims subject to security interests and other liens may also increase or decrease depending upon payments made after the filing of the petition on the debts secured or by increases to those debts as a result of post-petition advances or expenses incurred by a creditor having a long term nondischargeable debt.

of "stripping" of a security interest for the purpose of 11 U.S.C. § 1322(b)(2) *relatively* relate in order to achieve a process consistently predictable for all Chapter 13 cases.

As will be addressed below, the critical event point winner is the date of the filing of the petition initiating the case.

## I THE PROCEDURAL PROCESS OF THE CASE

On April 28, 2010, Robert J. Hegeduis and Kerri M. Hegeduis ("Hegeduis") filed a voluntary petition by which a case under Chapter 13 was initiated in the United States Bankruptcy Court for the Northern District of Indiana, Hammond Division. As docket record entry number 2, Hegeduis filed a Chapter 13 plan on April 28, 2010. Also on that day, included in docket record entry number 1, Hegeduis filed the required Schedules of property and debts, particular among them for the purposes of this case—Schedule A, Schedule C and Schedule D. Also as part of record entry number 1, Hegeduis filed a matrix of addresses of creditors, which stated the address to be used for Harris N.A. ("Harris") as follows:

HARRIS N.A. 3800 GOLF RD STE. 300 ROLLING MEADOWS, IL 60008

This address was utilized by the Court for all purposes of providing notice of matters in the case to Harris [3].

Schedule A stated the following with respect to the residential real estate involved in this adversary proceeding:

Real Estate located at 1335 Tanglewood Ct., Crown
Point IN 46307
Mortgage 1: CitiMortgage
Mortgage 2: Harris. Mortage 3: Harrris
Market value based on appraisal 1/2010
Fee simple J 242,000.00 348,877.00

Schedule C stated the following with respect to the foregoing real estate:

| Description of Property | Specify Law Providing Each Exemption | Value of Claimed Exemption | Current Value of Property Without Deducting Exemption |
|---|---|---|---|
| Real Property | | | |
| Real Estate located at 1335 Tanglewood Ct., Crown Point IN 46307 Mortgage 1: CitiMortgage Mortgage 2: Harris. Mortage 3: Harrris Market value based on appraisal 1/2010 | Ind. Code § 34-55-10-2(c)(1) | 35,200.00 | 242,000.00 |

Schedule D stated the following with respect to the mortgages held by Harris on the residential real estate:

3. Harris filed two Proofs of Claim in this case, numbers 22–1 and 22–3. In each of those claims the following is stated as the "Name and address where notices should be sent": HARRIS N.A.—Attn: Bankruptcy Dept. 3800 Golf Rd Ste 300 Rolling Meadows, IL 60008. It bears noting that the address utilized by Hegeduis in the matrix of creditors is essentially identical to the street and suite address to which Harris requested notice in its filed proofs of claim.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER | DATE CLAIM WAS INCURRED, NATURE OF LIEN AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|
| Account No. xxxxxx4301 Harris N.a. 3800 Golf Rd Ste. 300 Rolling Meadows, IL 60008 | Opened 1/01/07 Last Active 1/24/10 Second Mortgage Real Estate located at 1335 Tanglewood Ct., Crown Point IN 46307 Mortgage 1: CitiMortgage Mortgage 2: Harris. Mortgage 3: Harris Market value based on appraisal 1/20/10 | 66,288.00 | 66,288.00 |
| Account No. xxxxxx7563 Harris N.a. 3800 Golf Rd Ste. 300 Rolling Meadows, IL 60008 | Opened 9/01/07 Last Active 2/17/10 Home Equity Line of Credit Real Estate located at 1335 Tanglewood Ct., Crown Point IN 46307 Mortgage 1: CitiMortgage Mortgage 2: Harris. Mortgage 3: Harris Market value based on appraisal 1/20/10 | 39,241.00 | 39,241.00 |

Section 10 of the original plan filed as record number 2 stated the following with respect to the mortgages of Harris on the subject residential real estate:

10. The following liens shall be avoided pursuant to 11 U.S.C. § 522(f), or other applicable sections of the Bankruptcy Code:

| Name | Amount of Claim | Description of Property |
|---|---|---|
| Harris N.a. | 66,288.00 | Real Estate located at 1335 Tanglewood Ct., Crown Point IN 46307 Mortgage 1: CitiMortgage Mortgage 2: Harris. Mortage 3: Harrris Market value based on appraisal 1/2010 |
| Harris N.a | 39,241.00 | Real Estate located at 1335 Tanglewood Ct., Crown Point IN 46307 Mortgage 1: CitiMortgage Mortgage 2: Harris. Mortage 3: Harrris Market value based on appraisal 1/2010 |

This plan was superseded by an amended plan filed as record number 15 on May 24, 2010, and it is this latter plan which was provided to creditors and parties in interest for consideration of its confirmability. Section 10 of the amended plan is identical to the above-stated Section 10 of the original plan.

As record number 17 entered on May 27, 2010, the court entered its ORDER AND NOTICE SCHEDULING HEARING ON CONFIRMATION OF CHAPTER 13 PLAN AND FIXING TIME TO OBJECT THERETO. As evidenced by record number 18, a copy of the record number 17 order and of the amended

Chapter 13 plan were mailed to "HARRIS N.A.", at "3800 GOLF RD STE 300, ROLLING MEADOWS, IL 60008". Harris did not object to confirmation of the amended plan.

At a hearing on confirmation of the amended plan held on July 8, 2010, the court determined the following, stated in record entry number 25:

Docket Entry as to confirmation hearing held 7/8/10 (related document(s)15 Amended Chapter 13 Plan filed by Robert J Hegeduis, Kerri M Hegeduis. APPEARANCES: Atty. Godshalk appears on behalf of Trustee. The lien avoidanc-

es stated in paragraph 10 must be effected by separate contested matter(s)/adversary proceedings(s). Lake County Treasurer's claim on residence is not provided for; the Trustee and debtors shall file an agreed immaterial modification to correct the address of surrendered property. A Status Conference as to confirmation of the amended plan is hereby set for August 9, 2010 at 1:00 p.m. SO ORDERED.

At a status conference concerning confirmation of the amended plan held on August 9, 2010, the court determined the following, stated in docket record number 27:

> Docket Entry: Status Conference on Confirmation held on 8/9/10 RE:(related document(s)15Amended Chapter 13 Plan filed by Robert J Hegeduis and Kerri M Hegeduis. APPEARANCES: Atty. Matern on behalf of Debtors and Atty. Hoham on behalf of Trustee. It is ORDERED that the debtors and trustee shall file an agreed immaterial modification in 21 days. The plan can then be confirmed.

The Amended Chapter 13 Plan was confirmed by the confirmation order entered as record number 41 on November 5, 2010.[4]

On October 1, 2010, Harris filed Claims numbers 22–1 and 23–1 with respect to debts secured by mortgage security interests in Hegeduis' residential real estate. Although these claims were late filed, no objection has been filed with respect to them.

On October 24, 2012, Hegeduis by counsel Daniel W. Matern filed adversary proceeding 12–2203, which seeks to strip the second mortgage held by Harris on the Hegeduis' residential real estate. An answer to the adversary complaint was filed as record number 7 on November 7, 2012 by Harris N.A. Subsequently, throughout an extended period of time, telephonic conferences were held with respect to the processing of the case. Included in those conferences was one held on March 20, 2013, documented by record entry number 11, which included the following statement:

> The parties will obtain/exchange appraisal information. At the next conference the parties will address whether an evidentiary hearing will be necessary and their respective positions on the relevant date of valuation (e.g. date of the petition; date of filing of the adversary proceeding; date of the evidentiary hearing, first confirmation hearing date; other).

---

4. As the foregoing docket entries establish, at the initial confirmation hearing the court noted that the lien avoidances stated in Section 10 of the Amended Plan "must be effected by separate contested matter(s)/adversary proceeding(s)." The record establishes that no adversary proceeding to strip the mortgages of Harris had been either filed or determined by the date of entry of the confirmation order. In 2010, the court did not necessarily require the completion of an adversary proceeding to "strip" liens as a condition of entry of an order of confirmation. Rather, at that time, based upon materials of record, an assessment was made as to whether or not a mortgage appeared to be strippable based upon the applicable law to be applied to that issue if there was no creditor objection to the strip. Based upon Hegeduis' Schedules, the two mortgages of Harris on their residence appeared to be strippable, and thus the plan was confirmed. However, as stated in the plan confirmation order, confirmation of the plan did not obviate the requirement of this Court that stripping of mortgages or other liens on residential real estate in a Chapter 13 plan must be effected by an adversary proceeding. If that adversary proceeding were never filed and the plan were completed, the mortgages would survive completion of the plan and the entry of an order of discharge of the debtors.

The manner of final determination of the appropriate "valuation date" was stated in record number 21 as follows:

> Status Conference held on March 19, 2014 (related document(s)1 Complaint for Validity, priority, or extent oflien or other interest in property filed by Plaintiff Robert J Hegeduis, Plaintiff Kerri M Hegeduis). APPEARANCES: Atty Matern on behalf of plaintiffs and Atty Alaily on behalf of Defendant. The issue of law to be presented to the court for determination is the point in the case at which a mortgage strip is to be determined, both as to value of the real property and as to the amount of priority liens. The court determines that the point is one of the following: (1) the petition date; (2) the date upon which the first hearing concerning confirmation of the plan is set; (3) the date of filing of the proceeding ( in this court an adversary proceeding) by which the mortgage is sought to be stripped; or (4) the date of trial of the paragraph (3) proceeding, realizing that appraisals will necessarily somewhat predate that date. The date of plan confirmation is not an alternative given that in this court, a Chapter 13 plan will not be confirmed until the paragraph (3) proceeding is finally determined. IT IS ORDERED that the debtors and Harris N.A. shall each file an initial legal memorandum addressing the foregoing legal issue by May 16, 2014. Each party may file a response by June 20, 2014—there will be no replies to responses.[5]

Both Hegeduis and Harris have complied with the requirements of the foregoing entry.

## II. *ANALYSIS*

■ As both Hegeduis and Harris note in their respective legal memoranda, the critical event point in the case at which relative valuation is to applied has not been the subject of a decision of the United States Supreme Court, the Court of Appeals for the Seven Circuit, or the United States District Court for the Northern District of Indiana. As the parties also note, there is case law authority which determines the critical event point to be at different points in the Chapter 13 case process, including the date of the filing of the petition; the date of the filing of a Chapter 13 plan; the date of hearing on confirmation of the Chapter 13 plan; the date upon which a proceeding to determine whether or not a mortgage is strippable is filed; and the date upon which that proceeding is tried and then determined. The foregoing being said, this court does not find it helpful to address any of the various cases on any of the various theories, except to say that the date of the filing of the petition appears to be the mode.

As the preamble to this decision addressed, it is meaningless to state that a valuation is to be determined as of a discrete date of a discrete event in a Chapter 13 case, and it is in fact existentially impossible to do so unless the valuation date dictates the critical event point.

In this court's view, the analytical method employed by using other than an absolute constant as the critical event point results in the valuation controlling the relative result in separate cases, resulting in a process which is neither predictable nor uniform.

Let's first consider the manner in which evidence of valuation is derived for the

---

5. As noted previously, the court's present practice has changed somewhat over the last several years with respect to completion of the adversary proceeding as a condition of confirmation.

purposes of presentation to a court. The most prevalent means of proving valuation is through the mechanism of an independent appraisal. There are three principal appraisal methods for real estate: fair market value, the income approach, and replacement cost. With respect to any residential real estate which the court has yet encountered, the mechanism predominantly and customarily employed by appraisers is the fair market value approach, an approach which relies heavily on comparable sales comparisons. In most appraisals that this court has seen, an appraiser derives the principal information concerning comparable sales from multiple listing service sources, which include fairly detailed descriptions of real estate, the listing price, the date of sale, and the amount of the sales price. Very few, if any, of these appraisals actually involve the appraiser's physical inspection of the interior of a comparable; many do not involve the appraiser's visual review of the actual (as contrasted to photographs) exterior of a comparable. Some appraisals are "drive-bys", which may or may not include an appraiser's detailed evaluation of comparable sales. While it is true that the owner of real property is always a competent witness to testify as to its value, in the court's experience most owners' valuations are entitled to little weight due to their lack of knowledge of the general sales atmosphere and of comparable sales, and their lack of training and expertise in making adjustments between other properties and their own.

In practical terms, in proceedings such as the one in this adversary proceeding, evidence of value will be provided by means of an appraisal report prepared by a professional appraiser which includes the list of comparable sales and adjustments to those sales; which probably does not include a visual inspection of the interior of comparable sales properties and in many cases will not include a visual inspection of the exterior of comparable sales properties; and which states an opinion of value as of a specific date. Given the way these things go, the date of stated value may or may not be the date upon which the final draft of the appraisal report is completed and signed by the appraiser. In fact, because all of the relevant facts which are utilized in coming to the final appraisal value opinion were derived from a time period at least slightly removed from the date of final preparation of the report, the opinion of value does not necessarily reflect an actual value as of the date those facts were perceived or obtained. As a result, the appraisal itself is a relative document in terms of its assessment of value: it represents an opinion of value stated as of a specific date, but it does not existentially actually reflect the valuation on the date stated.

As was true with the relativity of values determined by appraisers as stated in appraisal reports, picking a specific discrete date/event point in a Chapter 13 case as one at which real property will be valued can also be a relative concept. If the parties cannot otherwise resolve the case, the determination of values, amounts of secured claims which must be considered, and other matters which affect the "stripability" of a security interest or other lien will be accomplished in an evidentiary hearing. Obviously, because of the way the world works and we do not shift back and forth between space/time continuums, the evidence submitted at the evidentiary hearing will not and cannot reflect the value of real estate on the date of the hearing. One can pick any possible critical event point in a Chapter 13 case—the date of the petition, the date of the filing of a plan, the date of confirmation of a plan, the date of the filing of an adversary proceeding, or whatever—and the same will be

true. It is thus impossible to designate a discrete event point in a Chapter 13 case at which a valuation determination—based on *absolutely contemporaneous evidence*—can be made.

Next, let's look at the relative sequencing and timing of particular critical events in Chapter 13 cases. The first date is of course the petition date, which is a fixed, discrete moment in time. Pursuant to Fed.R.Bankr.P. 1007(c), schedules or other documents required by Fed.R.Bankr.P. 1007(b)(1), (4), (5) and (6) are to be filed with the petition or within 14 days thereafter, subject to relatively limited allowable extensions. As stated in Fed.R.Bankr.P. 3015(b), a Chapter 13 plan is to be filed within 14 days of the date of the filing of the petition, subject to extensions of time for cause shown. In point of fact, most initial Chapter 13 plans are filed either with the petition or within the initial 14–day deadline.

As the foregoing time line establishes, differentiating between the petition date and the filing date of an initial Chapter 13 plan is a relatively meaningless differentiation, due to the minimal amount of time that nearly always passes between the two. The valuations of property and claims will be pretty much the same at each of these event points.

The process for submission of Chapter 13 plans to creditors for consideration of confirmation, and the time frame for that submission, is stated in 11 U.S.C. § 1324(b). The critical date is the date of conclusion of the Section 341 meeting, as established by the Chapter 13 Trustee. For any number of reasons, this conclusion date will be at least several months from the date the case was filed, and may be a number of months from the date the case was filed. The principal deadline for the initial confirmation hearing is not earlier than 20 days nor more than 45 days from the date of conclusion of the Section 341 meeting. In most cases the Chapter 13 plan submitted to creditors is that which was filed at or near the time of the inception of the case, and includes values of property and treatments of claims based upon values essentially derived prior to the date of the filing of the case or as of the petition date. Included in the parameters of those values and treatments may be a provision which seeks to strip a subordinate security interest in residential real estate. It is ridiculous to state that the date of valuation of anything is the date of the confirmation hearing, primarily because no one will have competent evidence of valuation of real or personal property on the date of plan confirmation, but rather will have evidence of valuation derived at some point prior to that date, or to be derived after that date. Moreover, the confirmation hearing date can vary significantly from case to case, which places an observer on the confirmation hearing date platform in one case in an entirely different time continuum from an observer on that platform in another case, even in a theoretically identical valuation continuum.

The Bankruptcy Code may somewhat provide statutory guidance in relation to valuation of unsecured and secured claims for the purposes of the plan confirmation process. Both 11 U.S.C. § 1325(a)(4) and 11 U.S.C. § 1325(a)(5)(B)(ii) provide that valuations are to reflect the "effective date of the plan". The concept of "effective date of the plan" is not a defined term in either the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure. It is not a term which has been well addressed in decided cases. In order to provide a practical, logical reference point, the effective date of any plan must be held to be not later than the date upon which that plan is filed, not the date upon which a hearing is held to determine the plan's compliance

with provisions of the Bankruptcy Code, including 11 U.S.C. § 1325(a). But, the concept of a plan's effective date must include consideration of the manner in which claim values are to be determined. In relation to a creditor holding an allowed claim secured by personal property, this concept is somewhat delineated by 11 U.S.C. § 1326(a)(1)(C), which provides for payments of adequate protection prior to confirmation of a bankruptcy plan—a consideration which cannot be made without determining the value of property on the date of the petition and hypothetically depreciating that property for a designated term to determine the diminution in value of the property caused by the imposition of the stay—i.e., the amount of adequate protection. This concept is further emphasized by 11 U.S.C. § 1325(a)(5)(iii)(II), which again imposes the concept of adequate protection on periodic payments to be made to creditors holding claims secured by personal property, over the duration of the plan.

Critical event points for valuation based upon activities in an adversary proceeding are entirely artificial and variable. In order to confirm a plan, it is necessary to determine that all requirements of the Bankruptcy Code have been satisfied by the plan [e.g. 11 U.S.C. § 1325(a), including 11 U.S.C. § 1325(a)(1)]. If a plan proposes to strip a mortgage or other lien in residential real estate, it is then proposing to pay the creditor having that security interest or other lien as a general unsecured claimant. This proposal is made by means of a plan, and cannot be done by means of the adversary proceeding itself; *See, In re Ryan*, 725 F.3d 623 (7th Cir. 2013).[6] However, not all bankruptcy courts require a separate proceeding to "strip" a security interest. Several years ago, the Honorable Robert E. Grant of the United States Bankruptcy Court for the Northern District of Indiana, Fort Wayne Division, conducted an informal e-mail poll of all bankruptcy judges in the country which had three possible options to which to respond in relation to the manner in which those courts dealt with security interest stripping: by means of a plan alone;

---

**6.** Hegeduis spends a portion of their initial memorandum addressing whether or not stripping of subordinate security interests in a Chapter 13 case is allowed. It is. First, Harris does not contest the principle of lien stripping in this adversary proceeding. Secondly, this Court has consistently followed the overwhelming majority case law view that stripping is allowed. Finally, in a passage which is not really *dicta*, in *Palomar v. First American Bank*, 722 F.3d 992, 995 (7th Cir. 2013), the United States Court of Appeals for the Seventh Circuit pretty well acknowledged the viability of this concept, stating as follows:

> The Palomars point out that liens on residential property can be stripped off in bankruptcies under Chapter 13 of the Bankruptcy Code, the counterpart for individual debtors of Chapter 11, which governs corporate reorganizations. A Chapter 13 plan can "modify the rights of holders of secured claims, other than a claim secured only by security interest in real property that is the debtor's principal residence, or of holders

of unsecured claims." *11 U.S.C. § 1322(b)(2)*. And despite the exception, courts allow a Chapter 13 plan to eliminate a secured junior claim (such as a claim secured by a second mortgage) against residential property if the security interest no longer has value because what the debtors owe holders of liens senior to this creditor's lien (the holder of a first mortgage for example) exceeds the value of the property. See *In re Bartee*, 212 F.3d 277, 292–95 (5th Cir.2000); *In re McDonald*, 205 F.3d 606, 615 (3d Cir.2000). That is what the Palomars want now, but to get it they would have had to file for bankruptcy under Chapter 13 rather than Chapter 7. The strip-off right in Chapter 13 is a partial offset to the advantages that Chapter 13, relative to Chapter 7, grants creditors, such as access to a larger pool of assets because the debtor must commit all disposable income for three to five years to repaying his unsecured debts. *11 U.S.C. § 1325(b)(1)(B)*.

by means of a motion initiating a contested matter; or by means of an adversary proceeding. While not statistically valid, the results of that survey were an almost even split among the three possible alternatives. This court requires an adversary proceeding; other judicial officers in this District allow stripping to be done by means of a clear statement in a plan. In this court, the plan provides for treatment of a purported secured claim by means of the strip, but the strip must be procedurally effected by means of an adversary proceeding. The actual statement of stripping is in the plan itself, and it is the proposal of stripping which is critical to the entire process, per *Ryan, supra.* The date upon which the actual adversary proceeding is filed has nothing to do with validly fixing the valuation/debt amount computations to be made in relation to the security interest. Using this critical event point allows the valuation to drive the event point, again resulting in different results for our two separate case platform observers. Going further into the adversary proceeding process, as evidenced in this case, discovery and negotiations can take an extraordinary amount of time, and the court's calendar affects the trial date. This processing will vary from case to case, and thus establishing the critical event point as the date of the trial or hearing is entirely arbitrary, and unacceptable if one seeks a consistent process for our two platform travelers.

After throwing out all of the totally unpredictable critical event points in a case, we are left with two possible points in a case. First is the date of filing of the petition; the second is the effective date of the plan if that date is not deemed to be the petition date, i.e., the date upon which the plan under consideration is filed. Let's compare these two concepts. The plan which will be submitted to creditors for confirmation consideration can be modified prior to confirmation, as provided by 11 U.S.C. § 1323. Posit a circumstance in which the debtor's initial plan does not provide for a lien strip because on the date of filing of the petition or the nearly concurrent date of filing of the initial plan, calculations—especially valuation of the residential real estate—do not allow for a strip. But then the debtor's teenage son has a wild teenage party in the house when his parents are away on a vacation, resulting in thousands of dollars of damage to the property and the resultant decline in its fair market value on the sales market. So the debtors now file a pre-confirmation amended plan providing for a mortgage strip based upon the reduced value. A number of other circumstances which result in the decline of value of real estate, even over a relatively short period of time, could be hypothesized, and perhaps even some which increase the value. Additionally, the "strip" valuation result also depends on the value of claims having priority over that sought to be stripped, a value which can be affected by reduction of the debt amount as a result of post-petition payments, or imposition of additional charges. Is this a rule that should be adopted? I think not.[7]

It is necessary to review initial filing requirements in a Chapter 13 case. Schedules, which state both the value of real property and the amount of debt asso-

---

7. Historically, the assumption has been that real property appreciates over time on a relatively consistent basis. That assumption—never valid in a number of areas of the country—should have been eviscerated by the financial crash of 2008 and the subsequent decline of housing market values. It can no longer be a systemic assumption with respect to valuation issues that real property will inevitably increase in value over time, even over a relatively short period of time.

ciated with liens on the real property, are required to be filed under the penalties of perjury. The Chapter 13 plan which provides treatment of claims based upon scheduled values is required to be filed in accord with Fed.R.Bankr.P. 9011. In the overwhelming number of cases, the initial schedules and the initial plan must be filed by no later than 14 days from the date of the petition. Apart from the relative impossibility of valuation on either of those event dates, a lapse of time between petition filing and plan filing is nearly always inconsequential in relation to real property values. The plan and the initially filed schedules should reflect the same valuations and debt amount computations, and thus there is no significance in differentiating between the date of filing of the petition and the date of filing of the initial plan. In order to alleviate manipulation resulting from unforeseen declines in value of real estate, or adjustment of debt amounts due to post-petition payments, the effective date of a Section 1323 preconfirmation modification must have the same reference point for valuation purposes as does the originally filed plan.

This appropriate reference point is the date of the filing of the bankruptcy petition.

The premise for allowing the stripping of a subordinate security interest on residential real estate is the concept that an underwater lien creditor with respect to the debtor's principal residence does not have a "secured claim" within the provisions of 11 U.S.C. § 1322(b)(2). The focus of determination of the status of the secured claim is the date of the filing of the petition. 11 U.S.C. § 506(a)(1) states the following:

> (a)(1) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of

this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

The last sentence of this Section creates some confusion sometimes, but not in the context of this adversary proceeding. The purpose of the valuation is to determine whether a subordinate security interest in a residence may be treated as an entirely unsecured claim. In the context of this adversary proceeding, the proposed disposition or use of the property both prior to the filing of bankruptcy and at all times subsequent to it was as the debtors' residence. The determination of value is made in conjunction with any hearing … on a plan affecting such creditor's interest, *but not on the date of a hearing.* Procedures employed by this court do exactly that: they determine the value of a purportedly "strippable" claim in conjunction with a confirmation hearing on the debtor's plan, with the reference point of valuation being the date the case was filed.

The "strip" procedure is nothing more than determining the value of an asserted secured claim as an allowed *secured* claim. The petition date is the critical date in the context of determining allowed secured claim valuations for other purposes. 11 U.S.C. § 506(a)(2) states:

> (2) If the debtor is an individual in a case under chapter 7 or 13, such value with respect to personal property secur-

ing an allowed claim shall be determined based on the replacement value of such property *as of the date of the filing of the petition* without deduction for costs of sale or marketing. (emphasis supplied)

This section clearly states that valuation of a secured claim with respect to personal property is determined as of the date of filing of the petition. In a consumer case, why would the date of valuation of personal property differ from the date of valuation of residential real estate? The answer is, it shouldn't. With respect to determining exemptions, 11 U.S.C. § 522(a)(2) states that the "value" of property of the bankruptcy estate in existence on the date of the filing of the petition "means fair market value as of the date of the filing of the petition". The determination of exemption amounts in many instances includes the determination of the amount/value of liens on certain property which cannot be avoided and therefore must be taken into account in determining the amount of an exemption which may be taken in that property; See, *In re Polis*, 217 F.3d 899 (7th Cir. 2000, rehearing denied). In a similar context, in reference to 11 U.S.C. § 522(f), the United States Court of Appeals for the Seventh Circuit in *In re Willett*, 544 F.3d 787 (7th Cir.2008) determined that a Chapter 13 debtor's interest in real property for the purposes of a motion to avoid a lien is the value of property on the date of the filing of the petition. Again, the concept of judicial lien avoidance depends in part upon determining the value of the real estate in relation to non-avoidable liens, usually mortgage security interests. It makes no sense to adopt a valuation standard in one context—lien stripping—that is other than the petition date—when in other contexts, statutes and case law require the use of the petition date for valuation. Finally, 11 U.S.C. § 109(e)

provides eligibility criteria for debtors in Chapter 13 cases, based in part upon the allowed value of secured claims in relation to a statutory debt ceiling for eligibility. In *Matter of Day*, 747 F.2d 405 (7th Cir. 1984), the United States Court of Appeals for the Seventh Circuit determined that for the purposes of the unsecured and secured debt ceilings for Chapter 13 eligibility, 11 U.S.C. § 506(a) valuation principles would be applied. Implicit in that decision is the concept that eligibility depends upon circumstances as of the date of the filing of the petition, not as of the date that a valuation determination is actually made. Thus, contexts analogous to a security interest strip, and statutes and case law applicable in those contexts, consistently determine the relevant valuation date to be the date of filing of the petition.

The court determines that the critical event point in a Chapter 13 case around which the 11 U.S.C. § 1322(b)(2) consequence of valuation of residential real estate relatively revolves is the date of the petition.

■ But we can't stop there. The absolute correlation of the petition date with the date of determining the value is impossible, as explained above. A debtor's counsel who relies on a debtor's expression of an opinion as to valuation of residential real estate, except in a case in which the debtor is actually a real estate professional, dangerously skirts issues under Rule 11. One can't get an appraisal stating a value as of a date in future—it just doesn't work that way. The farther removed from the date of the petition the appraisal is as to its statement of value, the less materiality it may have if the valuation is challenged. A principal criteria for determining whether or not comparable sales are relevant or material are the similarities or differences between the subject property

and the comparables, *and the date upon which the value of the comparable was established.* In an ideal world, professional appraisal values for the purposes of security interest stripping should be close in time in relation to the date the values are reflected by filings in the court, such as Schedules and the Chapter 13 plan. It is always better to obtain the appraisal in advance of the filing of the case and to utilize those values in the preparation of materials filed in the case. If that is impossible, a post-petition appraisal should reflect as closely as it can the value of property on the petition date.[8]

██ As the foregoing indicates, the court is strongly encouraging debtors' attorneys—in Chapter 13 cases in which subordinate security interest stripping will be provided for by a Chapter 13 plan—to obtain a recent professional independent appraisal of value prior to the filing of the case. But the cry comes up from the assembled multitude: "Judge, some cases require an emergency filing to stop a foreclosure or obtain possession of a repossessed car."; or, "Judge, debtors can barely afford the filing fee, let alone the cost of an appraiser." In response, the judge says ... Most cases do not have an immediacy to stop a foreclosure, stop a garnishment, or stop repossession of a motor vehicle. Even when cases do, the exigency can usually be placed upon the debtor's failure to do what a conscientious individual should do in dealing with financial matters. As to the cost, as noted by Judicial Clerk Robert Davidson, the cost of an appraisal

is a small price to pay to potentially avoid paying a multi-thousand dollar security interest over the course of a Chapter 13 plan as a secured claim.

Another aspect of "strip practice" in this Division that should be addressed is the filing of a plan that provides for a strip and then doing nothing with respect to an adversary proceeding until much later in the case, when everyone knows that the court requires the strip adversary proceeding to be finalized as a condition of confirmation of a plan. In a non-exigent circumstance case, the court perceives no reason why the adversary proceeding cannot be filed in a relatively short period of time after the filing of the petition, particularly in view of the now-expected circumstance that counsel will have a concrete valuation of real estate before they even file the Chapter 13 case. To be forewarned is to be forearmed.

This decision has now determined that the critical case event point for the purpose of determining the consequence of relative valuations concerning a security interest strip in a Chapter 13 case is the date of filing of the bankruptcy petition.

██ There is one other issue which requires resolution. Harris extensively argues that in the circumstances of this particular case, its rights to due process will be violated if the petition date is chosen as the relevant valuation date.

Harris argues in part in support of its due process contention that obtaining a valuation as of an earlier date is not possi-

---

8. Harris argues in this case that utilization of the petition date, as opposed to a more recent date, will prejudice it in relation to obtaining an accurate appraisal. The court totally discounts this argument: Most professional appraisals submitted in consumer bankruptcy cases are based upon comparable sales, information of which is derived from multiple listing service sources. These sources don't evaporate into the air, and it is possible to derive an historical value from historical data. The one thing that is compromised is the ability to inspect the subject property at a time relatively close to the petition date, and there may in fact be cases where the present physical characteristics of the property differ from those on the petition date. That is an issue for discovery.

ble. The court doesn't buy this argument at all.[9]

■ Harris also appears to argue that because the adversary proceeding was filed two and a half years after the filing of the bankruptcy case, it had no due process notice with respect to the effect on its security interest sought to be determined by the adversary proceeding. In response, the court first notes that Harris was designated as a creditor in the matrix of creditors filed by Hegeduis at the inception of the case. The record establishes that it—like all other creditors—received the court's initial notice of the filing of the case. Harris was served with the amended plan—which clearly provides for stripping of its second and third mortgages—and the court's order scheduling proceedings concerning confirmation of that plan. The notices to Harris were provided to essentially the identical address which Harris stated for notice to it in the two proofs of claim it filed in the case. Harris did not object to the mortgage stripping clearly provided for by the amended plan.[10] A creditor who receives proper notice of a bankruptcy plan which affects its interests and does nothing in response to that plan is in a poor position to raise, and in fact is unable to raise, a due process argument with respect to lack of notice of the plan on its interest; See In re Harvey, 213 F.3d 318 (7th Cir.2000); In re Pence, 905 F.2d 1107 (7th Cir.1990). There was no lack of due process. The court surmises that someone in the bankruptcy section of Harris N.A. in Rolling Meadows, Illinois viewed the plan when it came in, compared it to information in its files, and decided

that the second and third mortgages were entirely under water, and that therefore the expenditure of attorney's fees to contest the plan could not be justified. Again, whether or not that analysis actually took place, in a significant number of courts throughout the United States—including several in this District—the failure to object to the plan would be fatal to arguing against the security interest strip. The possibility that the subject real estate has increased in value since the petition date has no relevance to the treatment accorded by the amended plan to the second and third mortgages of Harris, nor with respect to the procedural mechanism of an adversary proceeding which this court requires in order to finally determine the stripping of a security interest. Finally, if Harris felt the need, Harris could itself have filed an adversary proceeding at any point in the case to determine the secured status of its second mortgage.

Based upon the analysis above, the court determines that valuation of residential real estate—and of other secured claims—at issue in this adversary proceeding for the purpose of applying 11 U.S.C. § 1322(b)(2) will be determined based upon the relative value of the real estate and claims on the date of the filing of the petition in Case Number 10–21904. The court further determines that due process in any and all forms has been provided to Harris with respect to issues concerning stripping of its mortgage interest in the debtors' residential real estate and matters concerning valuation of the real estate for that purpose.

---

9. See fn 8, infra.

10. It is Harris' dumb luck that this is a case before me, and not a case before another judicial officer in the Bankruptcy Court in this District, including the Honorable Kent Lindquist. Had the latter been so, Harris would have been stuck with the mortgage stripping by operation of the plan itself, and no contested matter or adversary proceeding would have been required at all to effect the mortgage strip.

IT IS ORDERED, ADJUDGED AND DECREED that the critical case event point for determining all valuation and claim amount issues for the purpose of security interest "stripping" under 11 U.S.C. § 1322(b)(2) is the date of the filing of petition initiating the case.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that a telephonic pretrial conference will be held on **February 11, 2015, at 1:00 P.M.,** to determine the course of further proceedings.